1  FOSTER GARVEY PC
   DIANA SIRI BREAUX, WSBA #46112
2  diana.breaux@foster.com
   1111 Third Avenue, Suite 3000
3  Seattle, WA 98101
   Telephone:  (206) 816-1416
4  Facsimile:   (206) 464-0125
   TODD REUTER, WSBA #20859
5  todd.reuter@foster.com
   618 W. Riverside Avenue, Suite 300
6  Spokane, WA 99201
   Telephone:  (509) 241-1561
7  Facsimile:   (844) 462-2906

8
   WILLKIE FARR & GALLAGHER LLP
9  BENEDICT Y. HUR, #224018
   *(Pro Hac Vice Pending)*
10 bhur@willkie.com
   SIMONA A. AGNOLUCCI, #246943
11 *(Pro Hac Vice Pending)*
   sagnolucci@willkie.com
12 JOSHUA D. ANDERSON, #312836
   *(Pro Hac Vice Pending)*
13 jdanderson@willkie.com
   One Front Street, 34th Floor
14 San Francisco, CA 94111
   Telephone:  (415) 858-7400
15 Facsimile:   (415) 858-7599

16
   Attorneys for Plaintiff
17 WORKDAY, INC.

18              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON
19                        AT SPOKANE

20 | | |
|---|---|
| WORKDAY, INC., a Delaware corporation, | No. |
| Plaintiff, | COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |
| v. | |
| WASHINGTON STATE UNIVERSITY and DOES 1 through 10, | |
| Defendants. | |

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 1
Case No. _____

Workday is one of the world's leading enterprise software companies. Approximately 40% of the Fortune 500 use Workday and its innovative cloud-based, integrated solutions. Workday brings this action to protect its trade secrets from disclosure to a private, for-profit market research company called the Tambellini Group. The information is in the possession of Washington State University ("WSU") because Workday bid for—and won—a contract to provide WSU with its software solutions. The Tambellini Group has made a public records request seeking numerous documents from WSU regarding Workday's products and services, with the stated goal of using the information to "advise clients"—meaning that it could be sold to competitors.

Workday is not objecting to disclosure of most of the information sought by the request. But Workday has identified a handful of documents that contain confidential and proprietary trade-secret information that should not be disclosed, particularly when the information could then be purchased by Workday's competitors.

## PARTIES

1. Plaintiff Workday, Inc. ("Workday") is a Delaware corporation with its headquarters and principal place of business in Pleasanton, California.

2. Defendant WSU is a public research university organized under the laws of the State of Washington and is located and headquartered in Pullman, Washington.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because the Plaintiff is a citizen of a different state than the Defendant.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 2
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

FG:53568625.1

4.      This Court also has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1331 because this matter arises under the laws of the United States. Specifically, adjudication of the First Cause of Action requires resolution of a substantial question of federal law.  In particular, the Court must determine whether Workday's proprietary business information qualifies for trade secret protection under the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*, in order to determine whether it is exempt from disclosure under the Washington Public Records Act.

5.      Venue is appropriate under 28 U.S.C. § 1391 because WSU is headquartered within the Eastern District of Washington and, on information and belief, maintains Workday's confidential information within this District.

## FACTUAL ALLEGATIONS

*The Workday Platform*

6.      Workday is a pioneer in software as a service business applications.  It develops and markets cloud-based enterprise resource planning ("ERP") software. The Workday platform integrates finance, human resource, and planning applications into a single, seamless system.  Workday's products include a software system tailored to the needs of higher-education institutions.

7.      Before Workday, institutions generally used on-premises human resources, finance and payroll solutions that were difficult to implement and expensive to maintain and update.  Workday created technology that offers these solutions in a cloud-based platform that is far more cost effective and responsive.

8.      In addition to being hosted in the cloud rather than hosted on-site, the Workday platform also seamlessly integrates large enterprises' functionalities. Previously, large entities had to use several different platforms to handle different aspects of their businesses, such as payroll and inventory.  Maintaining separate

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 3
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

FG:53568625.1

systems has many drawbacks, as the various systems are not necessarily interrelated, do not share terminology or unified processes, and do not centralize necessary data.

9. The Workday platform revolutionized ERP software by providing a single, fully integrated solution for an enterprise's core functions. Competitors have attempted to achieve this integration by cobbling together several distinct applications into a single program and have not yet achieved Workday's unified structure.

10. Workday's software is not available to the general public. Rather, Workday provides its software and related instructions, manuals, and training materials only to those who sign a nondisclosure agreement ("NDA"). This is because the Workday platform's combination of capabilities and processes is proprietary and unique, and public disclosure of the information would enable competitors to gain an advantage by mimicking the functionality of the Workday platform. The information would provide a competitor means to discern the precise functionality, architecture and underlying programming of Workday's software.

***WSU's Request for Proposal and the Tambellini Group's PRA Request***

11. In October 2017, Workday submitted a response to a request for proposal that WSU had issued in connection with its planned acquisition of ERP software (the "Proposal"). The Proposal detailed the capabilities of the Workday platform over the span of more than 200 pages. The Proposal also included several attachments, as relevant here: (1) a 64-page spreadsheet with responses to WSU inquiries regarding its ERP system specifications ("System Requirement Spreadsheet"); (2) Workday Business Process Definitions; (3) Workday Standard Reports; and (4) Workday Disaster Recovery Process.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 4
Case No. _____

12. Workday provided the information to WSU pursuant to a mutual NDA, a true and correct copy of which is attached hereto as **Exhibit A**. As the NDA required, Workday conspicuously identified 29 of the 207 pages of the Proposal as containing Workday confidential and proprietary trade-secret information. Workday also specifically noted where the confidential information included Workday trade secrets, encompassing each of the attachments listed above. Because Workday designated the records as proprietary, WSU was required under the NDA to maintain their confidentiality, and could not disclose them, except as required by law.

13. In June 2018, Workday ultimately was awarded the contract with WSU that was the subject of the Proposal.

14. On October 3, 2019, WSU informed Workday that it had received a request under the Washington Public Records Act ("PRA") from the Tambellini Group, a private market research group. The Tambellini Group focuses on the educational technology market. It advises vendors of education technology solutions (like Workday or its competitors), and investment firms as well as higher education institutions on the marketing, development, and selection of technology solutions.

15. The PRA request sought "[a] complete copy of Workday's final submitted technical, functional, and price proposal responses," including additional documents reflecting "Workday's representations concerning functionality and features of [its] proposed offering." WSU stated that it would release the responsive documents unless Workday obtained a court order preventing it from doing so.

16. Workday identified a narrow universe of information in the proposal and attachments that included proprietary, confidential and/or trade secret

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 5
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400　FAX (206) 447-9700

FG:53568625.1

information and identified that information to WSU. WSU agreed to redact certain portions of that information from its response to the request, but stated that the balance of Workday's Proposal would be subject to disclosure. WSU informed Workday that it intended to disclose that information unless Workday sought a court order by December 30, 2019.

*Proprietary portions of Workday's Proposal*

17. As explained above, portions of Workday's Proposal that WSU intends to disclose, including its attachments, contain proprietary, confidential trade-secret information (the "Protected Information"). They are described in Paragraphs 18 through 24 below.

18. Section 32 of the Proposal, in the "Application Architecture" portion of the Proposal, concerns system availability and performance during peak usage. This section describes how Workday manages data and request processing, the technology by which Workday performs this, and more particularly how it scales to very large volumes in an always-consistent way. This is Workday's core intellectual property and a key technology differentiation against Workday's competition. Public dissemination of this data would permit competitors to understand how Workday implements its technology and help them recreate Workday's core intellectual property.

19. Section 57 discusses Workday's accessibility features. "Accessibility features" are those that enable all individuals to access Workday's technology, such as speech recognition software and software that audibly reads the screen for the visually impaired. This section of the Proposal describes the Workday platform's then-available accessibility features, which remain available to date. Disclosure of this information would allow competitors to copy Workday's feature list rather than independently develop accessibility plans. It also would reveal to

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 6
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

FG:53568625.1

competitors the features Workday cannot provide, which would be of significant value to competitors because—for example—they could market their products to emphasize capabilities that Workday does not have.

20. All four attachments to the Proposal also contain Workday trade secrets and are not lawfully exposed in the public domain.

21. The System Requirement Spreadsheet provides a highly detailed view into Workday's application functionality. The document goes into granular detail about the application's capabilities and limitations, and its disclosure would allow Workday competitors to build a feature/function map across Workday's full product suite and would give them an unfair competitive advantage because they would know what Workday can and cannot offer.

22. The Workday Business Process Definitions provides detail about each of the processes that the Workday platform may run. None of these processes relate specifically or are unique to WSU. As with the System Requirement Spreadsheet, disclosure would allow Workday competitors to build a feature/function map across Workday's full product suite and would give them an unfair competitive advantage.

23. Similarly, the Workday Standard Reports provide detail about each of the reports that the Workday platform may run. None of these reports are unique to WSU. Disclosure of these reports would give Workday competitors an unfair competitive advantage.

24. The Disaster Recovery Process document comprehensively lays out Workday's plan in response to events that affect the availability of its service to customers. Workday's ability to operate against a defined service-level agreement (without caveat)—in this instance, responding to outages—is a key differentiator of its service relative to competitors. The document describing Workday's

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 7
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

FG:53568625.1

Disaster Recovery Process details a significant and distinct portion of how Workday operates its service and maintains a competitive differentiation on service-level agreements.

*Trade-secret status of the Protected Information*

25. The Protected Information described above is the result of years of substantial work and investment by Workday to develop a unique set of capabilities and services for its ERP platform. The scope of capabilities, limitations, structure, and services relating to the Workday platform are not generally known.

26. Workday carefully maintains the confidentiality of the Protected Information described above. It does not market or sell its platform to the general public. In order to license Workday software—or even receive confidential information about it—the customer or potential customer must sign an NDA like the one WSU has executed, and Workday clearly marks its proprietary data, as it did in its Proposal and attachments. The NDA imposes reproduction and disclosure restrictions upon users to ensure that Workday's proprietary information remains confidential. Workday employees also agree to maintain the confidentiality of Workday's proprietary information, and Workday maintains its data on a secure server. Even customer-facing documents receive protection beyond the NDA. Workday maintains an internet website that provides information and training materials to customers. In order to access these materials, however, a user must log in with Workday-issued credentials. Neither competitors nor members of the public are able to access materials on the website by legitimate means.

27. Workday has not, and would not, license its platform to a competitor. Because competitors are unable to license the product from Workday and may not

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 8
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

FG:53568625.1

1  obtain trade-secret information from Workday's customers, competitors have no
2  legitimate means of collecting the detailed data about Workday's functionality and
3  structure that Workday included in the Proposal to WSU.

4  28.  Maintaining the secrecy of the information preserves its substantial
5  value to Workday. Workday's fully integrated structure, and the ability to run
6  business processes and reports across that structure, are what set Workday apart
7  from its competitors. Workday obtains a substantial competitive advantage
8  through its ability to offer its unique set of reports and processes within its
9  structure to medium and large enterprises.

10  29.  Workday would suffer substantial and irreparable harm if WSU were
11  to disclose the Protected Information. Most obviously, disclosure would
12  compromise the information's trade-secret status, and would expose Workday to a
13  competitor's misappropriation of this data. Workday would also lose the
14  substantial competitive advantage it obtained through years of developing its
15  proprietary set of capabilities and services. Competitors would be able to use the
16  information, not only to understand Workday's functionality and limitations, but to
17  infer the architecture of its platform and the means by which Workday achieves its
18  capabilities. This would provide competitors with a substantial and unfair
19  competitive advantage, as they could avoid years of costly research and
20  development efforts, and target their research to copy Workday's capabilities and
21  exploit its limitations.

22  30.  The threat of disclosure also hampers the ability of Workday (and
23  undoubtedly others in the industry) to be fully candid about its products. With the
24  benefit of an NDA, Workday was able to fully and honestly address WSU's
25  specific needs and candidly explain whether and to what extent its platform may
26  have fallen short of WSU's requests. If Workday's trade secrets are subject to

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 9
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

FG:53568625.1

disclosure as a result of responding to requests for proposals, it could limit the amount of information it discloses—just as any other innovative company with valuable intellectual property may be forced to do. As a result, public agencies like WSU would not be able to obtain the same quality of information to guide them in substantial purchases of software.

31. It would be difficult to overstate the value of maintaining the confidentiality of Workday's trade secrets—and the cost of disclosure. Workday has invested billions of dollars to attain technological differentiation and superior functionality over its competitors, which is embodied in the Protected Information at issue. These trade secrets are the means by which Workday is able to attract lucrative contracts from medium and large institutions that are valued at from tens of thousands to millions of dollars. Disclosure of Workday's trade secrets would jeopardize its technological differentiation and result in the loss of substantial business opportunities. The value of Workday's trade secret information thus easily exceeds $75,000.

## FIRST CAUSE OF ACTION
## Injunctive Relief Under RCW 42.56.540

32. Workday re-alleges and incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

33. The PRA, RCW 42.56.070, requires disclosure of public records "unless the record falls within the specific exemptions of subsection [9] of this section, this chapter, or other statute which exempts or prohibits disclosure of specific information or records…."

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 10
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

FG:53568625.1

34. Statutes that protect trade secrets from disclosure constitute "other statutes" under RCW 42.56.070, exempting trade secrets from disclosure under the PRA.

35. Washington has adopted the Uniform Trade Secrets Act ("UTSA"), RCW 19.108.010 *et seq.*

36. The UTSA defines "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process that:

    a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

    b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (RCW 19.108.010(4).)

37. The Defend Trade Secrets Act, 18 U.S.C. § 1836, contains a similar definition of trade secrets that is also applicable in this case. The Protected Information at issue in this case consists of trade secrets, as defined under both Washington and federal law. Those trade secrets include detailed information about the structure and architecture of the Workday platform, its unique combination of capabilities and functions, Workday's service-level agreements, and the platform's accessibility functionality. The value of this Protected Information can be seen in a variety of ways, including its value to competitors.

38. The Workday Protected Information comprises and contains methods, techniques, and processes that derive independent economic value from not generally being known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. As

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 11
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

FG:53568625.1

discussed herein, Workday is careful to disclose these materials only to customers or potential customers who agree to confidentiality.

39. In addition, Workday takes various reasonable measures to maintain the secrecy of the Protected Information. As noted, Workday requires employees, customers and potential customers, including WSU, to agree to confidentiality. Furthermore, Workday marks any document containing its trade secret information with a designation such as "confidential" or "proprietary." In the Proposal to WSU, for example, Workday included the specific PRA exemption applicable to the Protected Information.

40. Workday's efforts to preserve the trade secret status of the Protected Information can also be seen in this Court action. Moreover, Workday has previously sought and obtained injunctive relief against a similar PRA disclosure by the University of Washington.

41. The release of the Protected Information would clearly not be in the public interest. The Protected Information was requested by a private business, the Tambellini Group, for its private purposes. Those purposes include advising Workday competitors on how to develop and market products to Workday's clients. If such sensitive information is subject to disclosure now, Workday and other vendors may be far less willing to share valuable details about their products or forgo bidding for government contracts altogether out of a concern that their information will later be disclosed to and used by their competitors. State agencies then may be faced with fewer qualified bidders and/or less comprehensive and less accurate information upon which to make major purchasing decisions. This chilling effect would clearly harm the public's interest in maintaining a competitive environment in which public contracts are awarded at the lowest cost, based on the best available information, and with the best available technology.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 12
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

FG:53568625.1

42. Disclosure of the Protected Information would substantially and irreparably damage Workday, as doing so would directly impact Workday's ability to protect the commercial value of its products and to obtain future business, and would also invite Workday's competitors to exploit that disclosure against Workday in the marketplace.

43. Pursuant to RCW 42.56.070 and RCW 42.56.540, Workday is entitled to an order from this Court barring Defendant from releasing the Protected Information at issue in this case. Workday requests an immediate temporary restraining order and a preliminary and permanent injunction barring Defendant from disclosing the Protected Information.

## SECOND CAUSE OF ACTION
### Injunctive Relief Under RCW 42.56.540

44. Workday re-alleges and incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

45. RCW 42.56.270(1) exempts from disclosure "[v]aluable formulae, designs, drawings, computer source code or object code, and research data obtained by any agency within five years of the request for disclosure when disclosure would produce private gain and public loss."

46. The Protected Information, which Workday provided to WSU within the last five years, comprises designs that are of substantial value to Workday and to its competitors. As noted, the Protected Information reveals the Workday platform's unique structure and functionality, by which Workday maintains a substantial competitive advantage. Competitors could obtain substantial value from exploiting the Protected Information in product development and marketing.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 13
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

FG:53568625.1

47. Disclosure of the Protected Information will result in private gain to the Tambellini Group, which will use Workday's Protected Information in its private efforts to advise competitors on product development and marketing.

48. Disclosure of the Protected Information will also cause public loss. If a vendor's sensitive information is subject to disclosure after submitting a Proposal, Workday and other vendors may be far less willing to share valuable details about their products or may forgo bidding for government contracts altogether out of concern that their information will later be disclosed to and used by their competitors. Public agencies then may be faced with fewer qualified bidders and/or less comprehensive and less accurate information upon which to make major purchasing decisions. The loss of this information not only deprives the public of critical information to guide major purchasing decisions, it also risks inefficient expenditure of public resources on products that poorly serve the public's needs.

49. Pursuant to RCW 42.56.270(1) and RCW 42.56.540, Workday is entitled to an order from this Court barring Defendant from releasing the Protected Information at issue in this case. Workday requests an immediate temporary restraining order and a preliminary and permanent injunction barring Defendant from disclosing the Protected Information.

## THIRD CAUSE OF ACTION

**Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202**

50. Workday re-alleges and incorporates by reference all allegations contained in the previous paragraphs of this Complaint.

51. Workday and WSU entered a valid and binding mutual NDA to govern the exchange of confidential, proprietary and trade-secret information.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 14
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

FG:53568625.1

52. Among other things, the NDA required WSU to maintain the confidentiality of Workday's Protected Information unless otherwise required by law.

53. Because Workday's Protected Information is exempt from disclosure under the PRA, as set forth above, WSU is not required by law to disclose the Protected Information, and doing so would therefore violate the NDA.

54. As an actual, substantial, and justiciable controversy exists between Workday and WSU, Workday seeks a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the Protected Information: (1) is exempt from disclosure under the PRA; (2) its disclosure is therefore not permitted under the NDA; and (3) it may not be disclosed for any purpose without the express permission of Workday.

## PRAYER FOR RELIEF

WHEREFORE, Workday prays that judgment be entered in its favor and against Defendant as follows:

1. On the First and Second Causes of Action, for an Order temporarily and permanently enjoining WSU from releasing the Protected Information. Workday specifically requests a temporary restraining order, a preliminary injunction, and a permanent injunction.

2. On the Third Cause of Action, for a Declaratory Judgment that:
   a. the Protected Information is exempt from disclosure under the PRA;
   b. disclosure of the Protected Information is not permitted under the NDA; and
   c. the Protected Information may not be disclosed by WSU for any purpose without the express permission of Workday.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 15
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

FG:53568625.1

     3.     For costs and expenses, if applicable, for violation of any of the cited statutes or of any of Workday's rights.

     4.     For interest, pre- or post-judgment, if applicable.

     5.     For any other relief to which Workday is entitled under the law.

DATED this 30th day of December, 2019.

                FOSTER GARVEY PC

                By: *s/ Todd Reuter*
                      Diana Siri Breaux, WSBA #46112
                      Todd Reuter, WSBA #20859

                WILLKIE FARR & GALLAGHER LLP
                Benedict Y. Hur (*Pro Hac Vice Pending*)
                Simona A. Agnolucci (*Pro Hac Vice Pending*)
                Joshua D. Anderson (*Pro Hac Vice Pending*)

                Attorneys for Plaintiff
                WORKDAY, INC.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 16
Case No. _____

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400   FAX (206) 447-9700

FG:53568625.1